UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-00059-LEW |
| | ) | |
| BENAJMIN BALL | ) | |
| | ) | |
| Defendant | ) | |

## <u>ORDER ON MOTION TO SUPPRESS</u>

This matter is before the Court on Defendant's Motion to Suppress (ECF No. 37), in which Defendant seeks the exclusion of evidence obtained from his cell phone. Following an evidentiary hearing and after careful consideration of submissions by Defendant and the Government,[1] Defendant's Motion is DENIED.

## BACKGROUND

On February 6, 2024, Officer Samuel Bennett of the Sanford Police Department performed a traffic stop on a vehicle in which Defendant was a passenger.[2]  During this stop, Defendant was placed under arrest and his phone was seized.[3]  On February 9, 2024, Det. Sgt. Kyle Kassa applied for a warrant to search the phone (Gov't Ex. 1).  The warrant was granted that day, to be returned within ten days.  When Det. Sgt. Kassa brought the

---

[1] In addition to the initial briefing on Defendant's Motion, I invited the parties to submit supplemental briefing after the hearing. *See* Order at ECF No. 48; Def. Supp. Mem. (ECF No. 51); Gov't Supp. Resp. (ECF No. 52).

[2] These facts are drawn from the parties' submissions and from testimony heard at the hearing on Defendant's Motion.

[3] Defendant's Motion does not challenge the constitutionality of the traffic stop, the arrest, or the seizure of the cell phone.

phone to a forensic examiner to be extracted, however, he learned that the forensic extraction could not be completed because the device was secured with an unknown passcode. He therefore returned the warrant unexecuted.

For the next several weeks, the phone remained in evidence with the Sanford Police Department, stored in a double-locked Faraday box. Det. Sgt. Kassa testified that during those weeks, he continued to pursue other avenues to develop the investigation, which ultimately renewed his interest in searching the phone.[4] On April 25, 2024, Det. Sgt. Kassa accessed the phone to attempt to unlock it by entering a six-digit passcode corresponding to Defendant's date of birth. When this passcode successfully unlocked the device, Det. Sgt. Kassa immediately locked it again and applied for a new search warrant. The warrant was granted that same day.

Det. Sgt. Kassa's affidavit for the second warrant application (Gov't Ex. 2) included the following information to support a finding of probable cause:

- Descriptions of four drive-by-shooting incidents that took place in Lebanon, Acton, and Wells, Maine, between January 4, 2024, and February 6, 2024;

- That residents of two of the homes where these shootings took place were close friends, and both owed money to the same individual ("Jason LNU" or Jason Fernald) for crack cocaine they had acquired from him;

- That Benjamin Ball was a passenger in Jason Fernald's vehicle when it was stopped by Sanford Police, and was arrested after cocaine was discovered in his possession;

---

[4] Specifically, Det. Sgt. Kassa testified that after reviewing a recorded phone call the Defendant made from jail, in which he provided his email password, he believed the Defendant's phone passcode might be a similarly easy-to-guess numerical combination. Det. Sgt. Kassa also testified that this review of call recordings made him aware of additional evidence he believed would be found on the phone.

- That when Ball was taken into custody, his phone was secured in the Sanford Police Department in a locked Faraday box;

- Verizon records that indicated Benjamin Ball's most frequent contact was Jason Fernald, and that the two exchanged approximately 200 voice calls, 550 text messages, and 36 voicemails between December 1, 2023, and February 5, 2024;

- Verizon records that indicated Benjamin Ball and Jason Fernald exchanged 31 text messages over an approximately 15-minute period on January 3, 2024, that concluded approximately 15 minutes before a shooting in Lebanon, Maine;

- Verizon records that indicated that Benjamin Ball and Jason Fernald exchanged three texts approximately 45 minutes before a shooting in Lebanon, Maine, that took place on January 28, 2024, and that, approximately two minutes after this event, Ball sent two more text messages and placed a phone call to Fernald;

- Messages from Jason Fernald's Facebook account from an exchange between him and Ball on January 2, 2024, in which Fernald complained about a debt owed by the resident of the home involved in the January 4 shooting incident and asked for Ball's assistance (in response to which, Ball offered to "send some shells threw the car");

- Confirmation from a confidential source (whose identity was known to Det. Sgt. Kassa, and who he interviewed on several occasions) that Ball conducted the shooting incidents that took place on January 3, January 28, February 2, and February 3;

- That the confidential source had viewed a video recording of one of the shooting events, that was recorded and transmitted by Benjamin Ball's phone, and that she believed depicted Ball carrying out a shooting; and

- More general information from Det. Sgt. Kassa's training and experience about the evidence that can be found on cell phones (such as communications with coconspirators, internet search history, photographs and audio/video recordings, personal calendars, and location information) and that such evidence "can remain on the device . . . for indefinite periods of time."

Gov't Ex. 2 §§ III.D-E.  In addition to this information about the Defendant's involvement in criminal activity and the evidence that he expected to find on the Defendant's phone, Det. Sgt. Kassa also explained in the affidavit that he had returned the previously issued warrant unexecuted after determining a passcode was needed for forensic examination of

the device.  *Id*. § III.E.15.  He also described how, knowing that people commonly use passcodes "that are easily remembered" and "unique to the user, such as the user's birthday," he entered a six-digit passcode corresponding to the Defendant's date of birth, which the phone accepted.  *Id*. § III.E.20.

## DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV.  Under most circumstances, the Fourth Amendment's prohibition against unreasonable searches requires law enforcement to obtain a warrant based "upon probable cause" prior to conducting a search of a suspect's cell phone.  *Id*.; *see also Riley v. California*, 573 U.S. 373, 403 (2014).  Defendant does not directly attack the search warrant that issued on April 25, 2024, pursuant to which his phone's contents were ultimately searched.  Rather, Defendant argues that his Fourth Amendment rights were violated before that point, and that those violations require suppression of the evidence ultimately obtained under that warrant.

Defendant first argues that the probable cause supporting the warrant that issued on February 9, 2024, had grown stale by April 25, 2024, when Det. Sgt. Kassa conducted a warrantless search of the cell phone.[5]  *See* Mot. at 3.  Because Det. Sgt. Kassa had learned that he could not obtain the evidence that was on the phone without the passcode,

---

[5] I understand the "warrantless search" that Defendant refers to here to be Det. Sgt. Kassa's attempt to unlock the phone with a passcode based on the Defendant's date of birth.  The search of the phone's contents that followed was pursuant to the second warrant, which Det. Sgt. Kassa obtained that same day.

Defendant argues, he no longer had probable cause to believe that evidence would be found on the phone so as to justify the phone's continued seizure.  Mot. at 4.

The probable cause standard "is not a high bar," requiring "only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *United States v. Cortez*, 108 F.4th 1, 8 (1st Cir. 2024) (cleaned up).  This standard requires probable cause to believe both (1) that "a crime has been committed—the 'commission' element," and (2) that "enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element." *United States v. Gonzalez*, 113 F.4th 140, 148 (1st Cir. 2024) (citation omitted).  There is a temporal component to probable cause, but all that is required is a "fair probability" that the evidence of crime that law enforcement expects to find will still be there at the time of the search. *Id.*; *United States v. Tiem Trinh*, 665 F.3d 1, 13 (1st Cir. 2011).

There is no reason to believe that the evidence Det. Sgt. Kassa thought he would find on the cell phone when it was initially seized would not still be there in April.  The phone had been securely stored in the Sanford Police Department, and the evidence law enforcement believed they would find on the device (such as messages, internet search history, location data, photos and videos) is not the kind that spoils. *See United States v. Cameron*, 652 F. Supp. 2d 74, 81 (D. Me. 2009) ("Once the officers obtained the computers and the discs, 'any danger that probable cause would cease to exist passed.'") (citation omitted).  Moreover, there is no evidence that during the weeks that followed the failed first attempt to search the device, anyone made any attempt to retrieve the phone from police custody.  Perhaps under different circumstances, continuing to hold a cell phone

5

because it may contain evidence that law enforcement has no plan or ability to retrieve would be sufficiently problematic to warrant suppression. *See United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013) (Gorsuch, J.) ("What, after all, is 'reasonable' about police seizing an individual's property on the ground that it potentially contains relevant evidence and then simply neglecting for months or years to search that property to determine whether it really does hold relevant evidence for trial or is totally irrelevant to the investigation and should be returned to its rightful owner?"). Under the totality of these circumstances, however, I am satisfied that the phone's continued storage in police custody did not itself run afoul of the Fourth Amendment.

Separately, Defendant contends that Det. Sgt. Kassa's unlocking of the phone was itself a warrantless search, conducted in violation of the Fourth Amendment. *See* Mot. at 4-5. "[A] search occurs whenever the government intrudes upon any place in which a person has 'a reasonable expectation of privacy.'" *United States v. Bain*, 874 F.3d 1, 12 (1st Cir. 2017) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). A search also occurs "when the Government obtains information by physically intruding on persons, houses, papers, or effects," under common-law trespass principles. *Id*. (quoting *Florida v. Jardines*, 569 U.S. 1, 4 (2013)) (cleaned up). Defendant appeals to the second of these standards.

The question of whether merely unlocking a cell phone amounts to a "search" within the meaning of the Fourth Amendment appears to be unsettled.[6] The Government,

---

[6] Perhaps seeking to avoid this thorny issue, the Government initially argued that Det. Sgt. Kassa's manipulation of the device was a reasonable continuation of the original search, pointing to out-of-circuit precedent holding that a search warrant may authorize more than one entry into the premises to be searched,

however, has identified a handful of district court decisions arising from comparable facts. Those courts have held that even if confirming a passcode amounts to a search, the defendant is not entitled to relief when law enforcement "obtain[s] no information from [its] actions other than confirmation that the cell phone was capable of being unlocked with this passcode." *United States v. Hearst*, No. 1:18-cr-00054, 2022 WL 16832834, at \*22 (N.D. Ga. Mar. 10, 2022), *rep. & rec. adopted*, 2022 WL 8163946 (N.D. Ga. Oct. 14, 2022); *see also United States v. Phillips*, No. 25-cr-20029, 2026 WL 328381, at \*7-8 (E.D. Mich. Feb. 8, 2026) (not deciding "whether entering a passcode of a locked phone constitutes an unlawful search" where "there are no fruits to suppress because the agents did not search the digital contents of the phone or obtain any evidence after checking if the passcode unlocked the phone"). One other decision cited by the Government goes a step further, holding that "simply using a passcode to unlock Defendant's cellphone without exploring the contents of the phone does not constitute a search under the Fourth Amendment." *United States v. Jackson*, No. 21-cr-00051, 2021 WL 4892223, \*2 (D. Minn. Oct. 20, 2021).

---

provided that (1) the subsequent entry is in fact a continuation of the original search (and not a new search) and (2) the subsequent entry and continuation of the search were reasonable under the totality of the circumstances. *See*, *e.g.*, *United States v. Keszthelyi*, 308 F.3d 557, 568-69 (6th Cir. 2002). Let's set to the side, for the moment, that the Government has not pointed to any case from any court within this Circuit applying this rule. I still do not see how a "subsequent entry" that took place more than two months later could be fairly characterized as a continuation of the original search. *See*, *e.g.*, *Keszthelyi*, 308 F.3d at 563 (describing a subsequent entry the morning after a search warrant was first executed and explaining that when officers returned to the property two days later, they obtained a new warrant). Moreover, any continued search would still have to be authorized by the original search warrant—indeed, as I understand it, claiming the authority of the original warrant is the whole point of the "reasonable continuation" argument. That warrant by its own terms expired approximately nine weeks earlier.

In *Bain*, the First Circuit held that inserting a key into the front door of a home without a warrant amounted to an unconstitutional search, applying the trespass principles articulated in *Jardines*. 874 F.3d at 14-16. In so holding, the Court distinguished previous cases "concern[ing] the use of keys on storage container padlocks," observing that "[s]torage container padlocks are 'effects' under the Fourth Amendment," and that "[t]he Fourth Amendment protects effects markedly less than it protects houses." *Id.* at 15. I think it is reasonably clear that a cell phone is an effect, but also one that has been given its own special status under the law, in light of the "highly personal nature" of the information it contains. *United States v. Wurie*, 728 F.3d 1, 8-9 (1st Cir. 2013); *see also Riley*, 573 U.S. at 393-97 (recognizing that "a cell phone search would typically expose to the government far *more* than the most exhaustive search of house"). I therefore cannot comfortably conclude that a cell phone "is most aptly treated as a mobile storage locker," as opposed to a home, for present purposes.[7] *United States v. Beriguete-Hernandez*, No. 2:24-cr-056, 2025 WL 1796032, at *6 (D. Me. June 30, 2025) (citing *United States v. Lyons*, 898 F.2d 210, 212 (1st Cir. 1990)) (using a key to ascertain vehicle ownership was not a search). Still, this acknowledgment of the special privacy considerations applicable to cell phones does not necessarily compel the conclusion that a cell phone must be treated like a home under *Jardines*, such that the mere placement of a finger on the touch screen

---

[7] Indeed, the *Hearst* Court, applying *Bain* and similar cases, concluded that it could not. 2022 WL 16832834, at *22-23 ("Costa's warrantlessly checking the phone to see if the passcode would unlock it, even if he conducted no further intrusion, was in fact a search, just as inserting a key into a door lock or using a key fob to unlock a door constitutes a search. . . . *Jardines* supports a finding that using a passcode to open a phone constitutes a search since it is a physical trespass into what otherwise would be private content on the phone.").

implicates the Fourth Amendment, as Defendant urges.  As the Supreme Court has repeatedly admonished, "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006), and I harbor some serious doubts that it would be reasonable to require law enforcement to run to the magistrate for a search warrant whenever the need arises to confirm that a suspected passcode will in fact afford access to a device.  In light of *Riley, Wurie,* and *Bain*, however, I am inclined to agree that "using Defendant's passcode to access his mobile telephone is not a preferred practice." *Jackson*, 2021 WL 4892223, *2.

Even assuming entering the passcode did amount to an unreasonable search, however, the Government has shown that the search that actually uncovered what Defendant seeks to suppress here was conducted in good faith reliance upon a validly issued warrant.[8]  In *Bain*, as discussed above, the First Circuit held for the first time that inserting a key into the door of a home amounted to a search, distinguishing previous cases in which similar conduct was held to not be a search.  874 F.3d at 14-16.  But it ultimately declined to suppress evidence seized during the subsequent search of the home, which was authorized by a subsequent warrant.  *Id*. at 19-24.  The First Circuit recognized that this situation was one "not expressly addressed in *Leon*: the warrant affidavit forthrightly discloses the facts that establish probable cause, but one of the facts essential to establishing

---

[8] In its initial response, the Government pointed instead to *United States v. Davis*, 564 U.S. 229 (2011), for the proposition that the exclusionary rule should only apply as a "last resort," and not to cases where "the deterrence benefits of suppression" do not "outweigh its heavy costs."  Gov't Resp. at 7 (quoting *Davis*, 564 U.S. at 237).  But "the [*Davis*] exception is available only where the police rely on precedent that is 'clear and well-settled.'"  *Bain*, 874 F.3d at 20 (quoting *United States v. Sparks*, 711 F.3d 58, 64 (1st Cir. 2013)).  There is no "clear and well-settled" precedent authorizing the conduct at issue here.  *Id*.

probable cause (the result of the key turn) was obtained as a result of an unconstitutional search."[9]  *Id*. at 21.  The Court nonetheless concluded that "good faith reliance on a warrant procured and issued in good faith saves the fruits of a warranted search from suppression"—even "a warrant that is itself tainted by the results of an unconstitutional search."  *Id*. at 22 (citing *United States v. Diehl*, 276 F.3d 32 (1st Cir. 2002)); *accord United States v. Hopkins*, 824 F.3d 726, 733-34 (8th Cir. 2016); *United States v. Holley*, 831 F.3d 322, 326-27 (5th Cir. 2016); *United States v. McClain*, 444 F.3d 556, 566 (6th Cir. 2005).  And even where the violative "invasion" was the result of the officer's "misapprehension of law," the good-faith exception was still available if that misapprehension "was 'close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable.'"  *Bain,* 874 F.3d at 22 (quoting *Hopkins*, 824 F.3d at 733); *see also Holley*, 831 F.3d at 326-27.

Here, as was the case in *Bain*, Det. Sgt. Kassa obtained a search warrant before conducting any additional examination of the phone or its contents (beyond confirming the passcode), as he understood the Fourth Amendment to require.  In the warrant application, he forthrightly conveyed the steps he had taken to confirm the phone's passcode and set

---

[9] Under *United States v. Leon*, "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" is not subject to the exclusionary rule, although there are circumstances under which law enforcement "will have no reasonable grounds for believing that the warrant was properly issued," in which case suppression remains appropriate.  468 U.S. 897, 922-23 (1984).  These include: (1) cases where the issuing judge was misled by the affiant, *see id.* at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)); (2) cases where the issuing judge "wholly abandoned his judicial role," *id.* (citing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)); (3) cases where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," *id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)); or (4) cases where the warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid," *id.  See also United States v. Sheehan*, 70 F.4th 36, 51 (1st Cir. 2023).

out the facts that gave him probable cause to believe the phone contained evidence of criminal activity—facts developed entirely apart from the Fourth Amendment violation Defendant claims here.  Following *Riley*, it is quite clear that examination of a cell phone's *contents* must be authorized by a search warrant to comport with the Fourth Amendment. But Det. Sgt. Kassa did not undertake a warrantless search of the phone's contents.  The action he did take without a warrant was much less clearly unconstitutional—if it was unconstitutional at all.  Under available precedent, "reasonable officers informed about the law" could have easily concluded as Det. Sgt. Kassa did: that testing a potential passcode on the locked phone did not amount to a search for which a warrant would be required.[10] *Id.* at 23.  Under these circumstances, I am persuaded that the ultimate search of the phone's contents was conducted in good faith reliance upon the subsequently issued warrant.  *Cf. Bain*, 874 F.3d at 21-23.

The purpose of the exclusionary rule is to incentivize law enforcement officers to bring their conduct into step with the requirements of the Fourth Amendment by punishing conduct that does not.  *See United States v. Cruz-Mercedes*, 945 F.3d 569, 576 (1st Cir. 2019).  As a result, "the Supreme Court has made clear that suppression is improper 'when law enforcement officers have acted in objective good faith or their transgressions have been minor.'"  *United States v. Medina*, 125 F.4th 310, 315 (1st Cir. 2025); *see also*

---

[10] Defendant urges the opposite: that "[t]he issues that control what standards apply to the search of a cellular telephone had been clearly established for years" and that "Detective Sergeant Kassa's search was simply not close enough to the line"—that is to say, so far past the line—"to trigger the exclusionary rule." Def. Supp. Mem. at 8.  Again, while this may be true with respect to searches of a phone's contents, it is not so with respect to the warrantless "search" Det. Sgt. Kassa undertook here.  *See Phillips*, 2026 WL 328381, *7 ("There is no clear answer" to the question of "whether merely entering a passcode of a locked phone constitutes an unlawful search."). Defendant points to no caselaw that indicates otherwise.

*Gonzalez*, 113 F.4th at 149 ("[W]hen the police act with an objectively reasonable good-faith belief that their conduct is lawful . . . the deterrence rationale loses much of its force."). Here, after confirming his suspicion about what the Defendant's passcode might be, Det. Sgt. Kassa applied for a warrant to search the phone's contents. This course of conduct simply does not strike me as "sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 702 (2009). Suppressing the fruits of the warrant-authorized search for a transgression as minor as the one alleged here—if it was a transgression at all, again a point very much in doubt—is stronger medicine than these circumstances call for.

## CONCLUSION

For these reasons, Defendant's Motion to Suppress (ECF No. 37) is DENIED.

SO ORDERED.

Dated this 7th day of April, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge